IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

UNITED STATES OF AMERICA,      :

      Plaintiff,             :

                          :

v.                          :    CIVIL ACTION NO.

                          :

2008 CADILLAC ESCALADE,    :   _____
VIN 1GYFK63898R257006,     :

                          :

      Defendant.            :

## COMPLAINT FOR FORFEITURE

COMES NOW, the United States of America, Plaintiff in the above-styled civil action, pursuant to 18 U.S.C. § 981(a)(1)(C) and 21 U.S.C. §§ 881(a)(4) and (6), and files this verified Complaint for Forfeiture, showing the Court as follows:

1.    The Court has jurisdiction over this case pursuant to 28 U.S.C. §§ 1345 and 1355.

2.    Venue is proper in this Court pursuant to 28 U.S.C. §§ 1355 and 1391.

3.    On or about January 15, 2014, agents of the United States Drug Enforcement Administration ("DEA") seized a 2008 Cadillac Escalade, VIN 1GYFK63898R257006 ("the Defendant Vehicle"), from Courtney Lavon Cain, a/k/a "Green" ("Cain"), at 3324

1

Peachtree Road, N.E., Atlanta, Georgia, a place within the venue and jurisdiction of this Court.

4.   The Defendant Vehicle is presently within the jurisdiction of this Court and is being held by the United States Marshals Service at a secure location.

## FORFEITURE STATUTES

5.   Pursuant to 21 U.S.C. § 841(a), except as authorized, it is unlawful for any person to knowingly or intentionally distribute or dispense a controlled substance, including cocaine.

6.   Pursuant to 18 U.S.C. § 981(a)(1)(C), any property, real or personal, which constitutes or is derived from proceeds traceable to a violation of any offense constituting a "specified unlawful activity" is subject to forfeiture to the United States.

7.   18 U.S.C. § 1956(c)(7) defines, in relevant part, a "specified unlawful activity" as any act or activity constituting an offense listed in 18 U.S.C. § 1961(1).

8.   18 U.S.C. § 1961(1) includes, as part of the list of offenses, "dealing in a controlled substance or listed chemical."

9.   Pursuant to 21 U.S.C. § 881(a)(4), all vehicles that are used, or are intended for use, to transport, or in any manner

facilitate the transportation, sale, receipt, possession or concealment of a controlled substance in violation of 21 U.S.C. § 841 are subject to seizure and forfeiture to the United States.

10. Pursuant to 21 U.S.C. § 881(a)(6), all moneys and things of value that were furnished or intended to be furnished in exchange for a controlled substance, that constitute proceeds traceable to such an exchange, or that were used or intended to be used to facilitate the sale or exchange of a controlled substance in violation of 21 U.S.C. § 841 are subject to seizure and forfeiture to the United States.

<u>THE INVESTIGATION</u>

11. Since July 2012, DEA agents in have been investigating a Mexico-based drug trafficking and money laundering organization headed by Carlos Sandoval-Munguia ("the Sandoval-Munguia DTO"). DEA Special Agent Deverron Ramcheran ("Special Agent Ramcheran") and Task Force Officer Tremell Harvey ("TFO Harvey") have been involved in the investigation.

12. Through the course of the investigation, DEA agents determined that the Sandoval-Munguia DTO had a cell operating in the Atlanta area.

13. Based on information gleaned from confidential sources, court-authorized intercepted telephone calls, consensually

recorded telephone calls, and other investigative efforts throughout the investigation, DEA agents were able to identify multiple people involved in supplying cocaine and marijuana to, and purchasing those drugs from, the Sandoval-Munguia DTO, including Cain and Jonathan Crutcher ("Crutcher").

14. Throughout the investigation, agents conducting surveillance observed Cain driving the Defendant Vehicle during suspected drug transactions.

15. Based on the evidence obtained throughout the investigation, a Grand Jury in the Northern District of Georgia returned an indictment on January 7, 2014, charging various members of the Atlanta-based Sandoval-Munguia DTO, including Crutcher, with conspiracy to distribute cocaine in violation of 21 U.S.C. §§ 846, 841(a)(1) and 841(b)(1)(B).

16. Other members of the Atlanta-based Sandoval-Munguia DTO, including Cain, were indicted in the Fulton County, Georgia, Superior Court.

17. On January 15, 2014, Special Agent Ramcheran and other DEA agents arrested Crutcher at 3056 Stone Gate Drive, Atlanta, Georgia.

18. Special Agent Ramcheran read Crutcher his Miranda rights, and Crutcher agreed to speak with the agents without an attorney.

19. During the interview, Special Agent Ramcheran showed Crutcher several photographs of various subjects believed to be involved with the Sandoval-Munguia DTO, and Crutcher identified those individuals by their name or nickname.

20. Special Agent Ramcheran showed Crutcher a photograph of Cain, and Crutcher identified him as "Green."

21. Crutcher told Special Agent Ramcheran that Cain was one of his drug customers and that he (Crutcher) had supplied kilograms of cocaine to Cain.

22. Cain's criminal history includes an arrest on or about October 29, 2009 for possession or exchange of a controlled substance and an arrest on or about February 22, 2010 for possession of less than one ounce of marijuana.

23. The Georgia Department of Labor has no record of reported wages for Cain.

### THE ARREST OF CAIN

24. As a result of evidence obtained during the investigation, on January 10, 2014, the Grand Jury of the Fulton County Superior Court returned an indictment on or about January 10, 2014, charging twelve members of the Atlanta-based Sandoval-Munguia DTO, including Cain, with conspiracy to violate the Georgia Controlled Substance Act.

25.   On January 15, 2013, TFO Harvey and other DEA agents went to
      Unit 2310 of The Buckhead Grand Condominiums, located at 3324
      Peachtree Road N.E., Atlanta, Fulton County, Georgia 30326, to
      arrest Cain.

26.   Agents knocked on the door to Unit 2319, and Cain answered.

27.   TFO Harvey told Cain that he had a warrant for Cain's arrest,
      and Cain asked why he was being arrested.

28.   TFO Harvey asked Cain if the agents could come inside to discuss
      the reason for the arrest, and Cain allowed the agents to enter
      the residence.

29.   TFO Harvey explained that Cain had been charged with violations
      of Georgia's Controlled Substance Act, and Cain stated that he
      did not know anything about any drugs.

30.   TFO Harvey observed a glass pipe containing burnt marijuana
      residue in plain view on the coffee table in the living room
      area of Cain's residence.

31.   TFO Harvey also observed a marijuana grinder containing
      marijuana residue in plain view sitting on the kitchen counter
      directly behind where Cain was sitting.

32.   TFO Harvey asked Cain if he had any guns or weapons inside the
      residence, and Cain stated that he had a handgun in the top
      drawer of the nightstand by his bed.

33. Cain gave TFO Harvey verbal consent to retrieve the handgun from the bedroom.

34. TFO Harvey went into the master bedroom and opened the top drawer of the nightstand.

35. Inside the nightstand, TFO Harvey found a loaded Rossi .38 Special handgun and a loaded North American Arms .22 caliber Long Rifle handgun.

36. TFO Harvey removed the handguns from the nightstand's drawer, and he observed a large amount of United States currency underneath the guns.

37. TFO Harvey showed the guns to Cain, and Cain stated that he owned both weapons.

38. During the interview, Cain told TFO Harvey that he was unemployed.

39. TFO Harvey asked Cain if there were any drugs or other illegal substances in his residence, and Cain responded that agents would have to get a search warrant before they could search any further inside his residence.

40. TFO Harvey arrested Cain for conspiracy to violate the Georgia Controlled Substance Act, and agents transported Cain to the Fulton County Jail.

## SEIZURE OF THE DEFENDANT VEHICLE

41. After Cain had been transported to the jail, TFO Harvey and other agents began to secure Cain's residence.

42. TFO Harvey returned the two handguns to the nightstand in Cain's bedroom.

43. As TFO Harvey was turning off the light in the master bedroom closet, he observed an open Neiman Marcus shopping bag in plain view directly underneath the light switch.

44. TFO Harvey observed that the open shopping bag contained two large plastic-wrapped bundles of United States currency.

45. Based on his training and experience, TFO Harvey knows that plastic shrink wrap is commonly used to aid in the packaging of drug proceeds and that the United States currency inside the Neiman Marcus bag was packaged in a manner consistent with drug proceeds.

46. Based on the information discovered during the investigation, the indictment charging Cain with trafficking illegal drugs, and the fact that Cain had stated he was unemployed, TFO Harvey seized the United States currency from the nightstand and the Neiman Marcus bag as drug proceeds.

47. Agents later counted the United States currency and found that it totaled $73,303.00.

48. TFO Harvey observed the keys to the Defendant Vehicle in plain view on the kitchen counter.

49. TFO Harvey knew that during the course of the investigation, DEA agents had observed Cain driving the Defendant Vehicle on multiple occasions during suspected drug transactions.

50. TFO Harvey seized the Defendant Vehicle as property used to facilitate the transportation, sale, receipt, possession or concealment of a controlled substance and as property constituting proceeds of drug trafficking.

51. On or about February 19, 2014, Crutcher pleaded guilty to conspiracy to distribute cocaine.

52. On or about March 11, 2014, Special Agents Ramcheran and Josh Moore interviewed Crutcher.

53. Crutcher told the agents that since approximately 2007 or 2008, he had regularly supplied Cain with large quantities of marijuana and cocaine and that he had done so up until the time of his arrest.

54. Crutcher further stated that Cain usually purchased between two and five kilos of cocaine, two to three pounds of "kush" marijuana, and 22 to 44 pounds of "mid-grade" marijuana and that Cain made his purchases as often as every week.

55. Crutcher told the agents that on one occasion in early 2012,

he supplied Cain with six kilograms of cocaine.

56. Crutcher further stated that after the transaction had been concluded, Cain called and told him that the driver who was transporting the cocaine had been stopped and arrested with the drugs.

57. Crutcher told the agents that he showed Cain how to "stretch dope," referring to a method of "cutting" the cocaine with other substances to increase the quantity of powder which can then be sold while decreasing the cocaine's purity.

58. Crutcher further stated that he had shown Cain how to mix "fish and Miami Ice," which are two products used to cut cocaine, and how to use a "press" to create more kilograms of cocaine.

59. Records from the Georgia Department of Revenue's Division of Motor Vehicles show that Cain is listed on the registration as the only owner of the Defendant Vehicle.

60. The registration for the Defendant Vehicle also shows that no liens have been recorded against the vehicle.

61. On or about March 26, 2014, Cain's grandmother, Cora L. Cain, filed a claim with the DEA contending that she is the "lawful owner" of the Defendant Vehicle because she is "the primary borrower on the loan" she obtained to purchase the vehicle.

62.   In support of her claim, Cora L. Cain submitted a copy of a Notice
      of Final Agreement from Cadence Bank showing that both she and
      Cain are listed as borrowers on a personal loan secured by Ms.
      Cain's bank account, not the Defendant Vehicle, as collateral.

## CONCLUSION

63.   The Defendant Vehicle is subject to forfeiture to the United
      States pursuant to 18 U.S.C. § 981(a)(1)(C), because it
      constitutes or was derived from proceeds traceable to a
      specified unlawful activity, namely the illegal distribution
      of controlled substances.

64.   The Defendant Vehicle is also subject to forfeiture to the
      United States pursuant to 21 U.S. C. § 881(a)(4) on the grounds
      that it was used, or was intended to be used, to transport, or
      in any manner facilitate the transportation, sale, receipt,
      possession or concealment of a controlled substance.

65.   The Defendant Vehicle is also subject to forfeiture to the
      United States pursuant to 21 U.S.C. § 881(a)(6) on the grounds
      that it was furnished or was intended to be furnished in exchange
      for a controlled substance, that it constitutes proceeds
      traceable to such an exchange, or that it was used or was
      intended to be used to facilitate the sale or exchange of a
      controlled substance.

WHEREFORE, Plaintiff prays:

    (1)    that the Court forfeit the Defendant Vehicle to the United States of America;

    (2)    that the Court award Plaintiff the costs of this action; and

    (3)    that Plaintiff have such other and further relief as the Court deems just and proper under the facts and circumstances of this case.

This 13th day of June, 2014.

Respectfully submitted,

SALLY QUILLIAN YATES
UNITED STATES ATTORNEY

MICHAEL J. BROWN
ASSISTANT U.S. ATTORNEY
Georgia Bar No. 064437
600 United States Courthouse
75 Spring Street, S.W.
Atlanta, GA 30303
Telephone: (404) 581-6000
Michael.J.Brown2@usdoj.gov

12

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

UNITED STATES OF AMERICA,          :
                                   :
        Plaintiff,                 :
                                   :
v.                                 :    CIVIL ACTION NO.
                                   :
2008 CADILLAC ESCALADE,            :    _____
VIN 1GYFK63898R257006,             :
                                   :
        Defendant.                 :

## VERIFICATION OF COMPLAINT FOR FORFEITURE

I, Special Agent Deverron M. Ramcheran, have read the Complaint for Forfeiture in this action and state that its contents are true and correct to the best of my knowledge and belief based upon my personal knowledge of the case and upon information obtained from other law enforcement personnel.

Pursuant to 28 U.S.C. ' 1746, I declare under penalty of perjury that the foregoing is true and correct.

This ___13___ day of June, 2014.

_____
SPECIAL AGENT DEVERRON M. RAMCHERAN
DRUG ENFORCEMENT ADMINISTRATION

13